

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-17-2003

# USA v. Johnson

Precedential or Non-Precedential: Non-Precedential

Docket 01-4284

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Johnson" (2003). *2003 Decisions.* Paper 648.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/648

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4284

UNITED STATES OF AMERICA

v.

THOMAS JOHNSON
a/k/a Chris Millner

Thomas Johnson,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 00-cr-00351-3
(Honorable Stewart Dalzell)

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 14, 2003
Before: SCIRICA, BARRY and SMITH, Circuit Judges

(Filed April 17, 2003)

OPINION OF THE COURT

SCIRICA, *Circuit Judge*.

This is an appeal of a restitution order. We will affirm.[1]

## I

Thomas Johnson conspired to defraud First Union Bank. From November 1998 through early March 1999, participants in the conspiracy cashed over 200 counterfeit checks at various First Union branches. As part of the scheme, Johnson cashed counterfeit checks made payable in his own name and in the name "Chris Millner," having obtained false identification under that name. Johnson kept a portion of the check proceeds and gave the remainder to the leaders of the conspiracy. Johnson also accompanied other participants in the conspiracy when they cashed counterfeit checks.

Based on his participation in the scheme, Johnson was charged with conspiracy to commit bank fraud, 18 U.S.C. § 371, and forty-two counts of bank fraud, 18 U.S.C. § 1344. Pursuant to a plea agreement, Johnson pleaded guilty to the conspiracy count and to one count of bank fraud.

The United States District Court for the Eastern District of Pennsylvania sentenced Johnson to sixty months in prison, five years of supervised release, a special assessment of $200.00, and restitution to First Union of $85,455.40. The District Court also instituted a schedule by which Johnson is to make payments towards his restitution obligation. The schedule requires Johnson, in the first year of his supervised release, to pay $50.00 a month towards his restitution. The monthly payments increase to $100.00 during the

---

[1]We have jurisdiction under 28 U.S.C. § 1291.

second year of supervised release, $150.00 during the third year, $200.00 during the fourth year, and $250.00 during the fifth year. Both Johnson and the government are permitted to petition the District Court for amendment of the payment schedule as the need may arise.

Johnson now appeals the restitution order, claiming the District Court erred in ordering him "to pay all $85,455.40 of the restitution sought by the government without an adequate consideration of [his] ability to pay that sum."

## II

"[W]e exercise plenary review over whether an award of restitution is permitted under law, [and] we review specific awards of restitution for abuse of discretion." *United States v. Crandon*, 173 F.3d 122, 125 (3d Cir. 1999). Factual findings underlying a restitution order are reviewed for clear error. *See, e.g.*, *United States v. Sain*, 141 F.3d 463, 476 (3d Cir. 1998).

Title 18, Section 3556 of the United States Code provides that a district court "in imposing a sentence on a defendant . . . shall order restitution in accordance with section 3663A" and that "[t]he procedures under section 3664 shall apply to all [such] orders of restitution." Section 3663A, part of the Mandatory Victims Restitution Act ("MVRA"), mandates restitution for "offense[s] against property" under Title 18 of the Code where "an identifiable victim or victims has suffered a . . . pecuniary loss." 18 U.S.C. § 3663A(c)(1)(A)(ii), (c)(1)(B); *see also* § 3663A(a)(1) ("[W]hen sentencing a defendant convicted of an offense described in subsection (c), the court shall order . . . that the defendant make restitution to the victim of the offense . . . ."). Such property offenses

3

include those "committed by fraud or deceit." § 3663A(c)(1)(A)(ii). Section 3664, also part of the MVRA, provides that "[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's loss . . . and without consideration of the economic circumstances of the defendant." § 3664(f)(1)(A). Read together, these statutes require that, when a defendant is convicted of a specified property offense, the district court must order restitution totaling the full amount of the victim's loss, regardless of the defendant's financial situation. *See, e.g.*, *United States v. Coates*, 178 F.3d 681, 683 (3d Cir. 1999).

Once full restitution is ordered, Section 3664 requires the district court to specify "the manner in which, and the schedule according to which, the restitution is to be paid." 18 U.S.C. § 3664(f)(2). In fixing this schedule, the court must consider the financial resources, projected earnings and other income, and financial obligations of the defendant. § 3664(f)(2)(A)-(C). The court can order the defendant to make a single lump-sum payment, periodic payments, or, if the defendant is indigent, nominal periodic payments. § 3664(f)(3)(A)-(B); *see also Coates*, 178 F.3d at 683-84.

Here, the District Court properly ordered full restitution and then set a payment schedule taking into account Johnson's financial situation. Therefore, Johnson's challenge to the restitution order lacks merit.

Detailed evidence demonstrated Johnson cashed checks totaling $85,455.40 and thus deprived First Union of that amount.[2] Johnson does not challenge the calculation of First Union's loss on appeal. Because Johnson was convicted of an offense for which full restitution is required, and because there is no dispute as to the amount of loss he caused, Johnson's restitution order must total $85,455.40.[3]

As for the payment schedule, the District Court adopted the Presentence Investigation Report, which details Johnson's educational background, past employment, sources of income, and assets and liabilities. *See, e.g.*, *United States v. Dawkins*, 202 F.3d 711, 716 (4th Cir. 2000) ("A court may comply with [fact-finding] requirements . . . by adopting adequate proposed findings contained within a presentence report.") (quotations omitted). The PSI also projects Johnson's earnings during supervised release. Working for the minimum wage of $5.15 an hour in a forty-hour per week job, Johnson can earn $10,712.00 a year. Allowing eighty percent of the yearly sum for subsistence leaves

---

[2] 18 U.S.C. § 3664(e) provides "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on . . . the government." 18 U.S.C. § 3664(e) also provides "[a]ny dispute as to the proper amount or type of restitution shall be resolved by . . . the preponderance of the evidence."

[3] During the sentencing hearing, the District Court also concluded that, for purposes of the United States Sentencing Guidelines, the loss amount was $152,111.55. On the initiative of the government, this total was reduced to $85,455.40 for purposes of the restitution order. The government stated that "it would be only the in-district checks that are signed by [Johnson] that would be" included in the total for restitution. As discussed, Johnson does not challenge the loss calculation for purposes of the restitution order, nor does he challenge the loss calculation for purposes of the Sentencing Guidelines.

$2,142.00 a year, or $178.50 per month, for restitution.[4] The District Court set a schedule with monthly payments less than $178.50 during the first three years of supervised release and more than $178.50 during the last two years. Notably, the court-instituted payment schedule totals $9000.00 over the five years of supervised release, whereas monthly payments of $178.50 over five years would total $10,710.00. Given that the payment schedule accords with the PSI's projections of Johnson's earnings as a minimum-wage employee, and that Johnson may petition for amendment of the schedule, it is clear the District Court adequately accounted for Johnson's financial situation when it set the schedule.

### III

For the reasons discussed above, we will affirm the restitution order.

---

[4]18 U.S.C. § 3664(e) provides "[t]he burden of demonstrating the financial resources of the defendant . . . shall be on the defendant." There is no indication that Johnson provided any other information as to his financial situation beyond that which appears in the PSI. Moreover, Johnson did not challenge the relevant findings and calculations in the PSI at the sentencing hearing, and does not challenge them on appeal.

TO THE CLERK:

Please file the foregoing opinion.

/s/ Anthony J. Scirica
Circuit Judge